IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLAVIN IVY, | ) Case No. 1:20-cv-265 |
| Plaintiff | ) |
| v. | ) RICHARD A. LANZILLO |
| | ) Chief United States Magistrate Judge |
| LAUREN BLAKE and J. WINTERS, | ) |
| Defendants | ) MEMORANDUM OPINION |
| | ) ON DEFENDANTS' MOTION FOR |
| | ) SUMMARY JUDGMENT [ECF NO. 42] |

MEMORANDUM OPINION

I.  Introduction

Plaintiff Glavin Ivy, an inmate at the State Correctional Institution at Forest, filed a complaint pursuant to 42 U.S.C. § 1983 against multiple defendants for constitutional violations that he alleged stemmed from events that took place in the prison library in December of 2019. ECF No. 5.[1] Following disposition of a motion to dismiss, ECF No. 20, the sole defendants remaining in the case are Lauren Blake and J. Winters, librarians at S.C.I. Forest. In his brief in opposition to the motion for summary judgment, Plaintiff concedes that Blake was not personally involved in the events at issue and agrees that his claims against Blake are unsupported by the record. ECF No. 48 at 8. Accordingly, judgment will be entered in her favor. Against Winters, Plaintiff asserts two claims, each alleging violation of his First Amendment rights.

Defendants have filed a Motion for Summary Judgment, a Concise Statement of Material Facts, and supporting exhibits. ECF Nos. 42-45. Plaintiff has filed a Brief in Opposition to the

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge.

motion and a responsive Concise Statement of Material Facts. ECF Nos. 48-49. The motion is ripe for review.

II.     Standard of Review

Federal Rule of Civil Procedure 56(a) requires a court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

In determining whether a genuine issue of material fact remains for trial, the court must consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To defeat a properly supported motion for summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings but must identify evidence that demonstrates the existence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Furthermore, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The moving party may also rely upon the absence of evidence to support an essential element of the opposing party's claim as a basis for the entry of summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

III.   Analysis

    A.   Facts

The following facts are undisputed.[2] On December 21, 2019, Plaintiff was in the library at S.C.I. Forest preparing legal documents for one of his cases. During this library visit, Plaintiff also drafted a motion on behalf of Ricky Fritchman, another inmate, regarding Fritchman's habeas corpus action. Plaintiff printed both his own document and the Fritchman document using the library printer. Defendant Winters reviewed the printed documents and gave Plaintiff his legal documents but withheld the document prepared for Fritchman. Plaintiff objected and unsuccessfully attempted to grab the Fritchman document. Winters issued a confiscation slip for the document. Plaintiff informed Winters that he intended to sue over this perceived civil rights violation. Plaintiff ultimately left the library, accompanied by a corrections officer.

On December 21, 2019, Winters filed a misconduct report charging Plaintiff with threatening her with bodily harm and using abusive language. Plaintiff was placed in the Restricted Housing Unit based on the nature of the misconduct reported. On December 23, 2019, a hearing officer dismissed the misconduct without prejudice due to an unspecified error. On December 31, 2019, Winters re-wrote her misconduct report, adding a charge of possession of contraband. On

---

[2] These facts are taken from Defendants' Statement of Material Facts in Support of Motion for Summary Judgment, ECF No. 44, and Plaintiff's Responsive Statement of Material Facts, ECF No. 49.

January 7, 2020, a hearing examiner found Plaintiff guilty of all three counts in the amended misconduct report.

B.   Free Speech claim

Plaintiff's first claim is that his First Amendment right to free speech was violated by Winters' confiscation of the Fritchman document pursuant to prison policy. Defendants move for summary judgment on this claim on the basis that "inmate-to-inmate legal communication is not afforded special protections." ECF No. 43 at 5. There is no material dispute of fact; thus, the claim is a proper one for summary judgment.

In support of his claim, Plaintiff asserts:

> The regulation in question is the confiscation and issuance of a misconduct for typing legal documents for another prisoner, which is a form of free speech. The Defendants have not, and can not, establish a rational connection between the regulation and a legitimate penological interest, and therefore Summary Judgment should be entered in Plaintiff's favor.

ECF No. 48 at 9.

This Court set forth the relevant law in the Memorandum Opinion on Defendants' Motion to Dismiss, as follows:

> "[A]n inmate's constitutional rights are 'necessarily limited.'" *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010) (quoting *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999)). Nevertheless, "it is settled law that an inmate 'retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Id.* (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).[fn 7] When examining the free speech rights of inmates, the Supreme Court in *Shaw v. Murphy* applied the test from *Turner v. Safley*, holding that "restrictions on inmate-to-inmate communications pass constitutional muster only if the restrictions are reasonably related to legitimate and neutral governmental objectives." 532 U.S. 223, 231 (2001) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In *Shaw*, the Supreme Court declined to distinguish between legal and non-legal speech of prisoners, refusing to give prisoner-to-prisoner legal assistance any First Amendment protection "above and beyond the protection normally accorded prisoners' speech." 532 U.S. at 231. Under the *Turner* test, a prison regulation that "impinges on inmates' constitutional rights" is "valid if it is reasonably related to legitimate penological interests." *Turner v.*

4

> *Safley*, 482 U.S. 78, 89 (1987). The Court applies a four-part test to assess the overall reasonableness of the regulation: (1) whether the regulation or practice bears a "valid, rational connection" to a legitimate and neutral governmental objective; (2) whether prisoners have alternative ways of exercising the circumscribed right; (3) "[what] impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether alternatives exist that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *See Turner*, 482 U.S. at 89-90. "If the connection between the regulation and the asserted goal is 'arbitrary or irrational,' then the regulation fails, irrespective of whether the other factors tilt in its favor." *Shaw*, 532 U.S. at 229-30 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).
>
> . . .
>
> [footnote 7]: The First Amendment applies to the states by incorporation through the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).
>
> . . .
>
> The Court notes that Ivy bears the ultimate burden of demonstrating the invalidity of the prison's policy. As the Supreme Court has emphasized repeatedly, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132 (citations omitted). "The burden, moreover, is not on the State to []prove the validity of prison regulations but on the prisoner to disprove it." *Id.*

ECF No. 20 at 13-14, 15.

In support of their motion for summary judgment, Defendants argue that Winters acted in accordance with DOC policy to prevent inmate-to-inmate legal correspondence as sanctioned by the United States Supreme Court in *Shaw*. ECF No. 43 at 5-7. This argument is flawed.

First, the holding in *Shaw* did not, as Defendants imply, exempt inmate-to-inmate legal correspondence from the *Turner* test, nor did it dictate that every regulation of such correspondence survives the *Turner* test. As this Court set forth in its previous opinion, the *Shaw* Court declined to give prisoner-to-prisoner legal assistance any *additional* First Amendment

protection over any other free speech rights enjoyed by prisoners, but it did not obviate the need for evaluating prison regulations as set forth in *Turner*.

Further, the record does not support a finding that Winters acted to prevent inmate-to-inmate legal correspondence *per se*. Instead, the evidence as to Winters' reason for confiscating the Fritchman document is undisputed: she assessed the document as contraband because it was in Plaintiff's possession but belonged to another inmate. ECF No. 48-1 at 4-5. Indeed, Plaintiff was found guilty of possession of contraband in the form of "another inmate's legal work." ECF No. 45-1 at 12. The misconduct was upheld on appeal on the basis that "[w]hen he typed [the document] and printed it on a computer that was signed out to him he was in possession of another inmate's property." *Id.* at 14. Per DOC policy DC-ADM 815, contraband is defined, *inter alia*, as "property belonging to another inmate." ECF No. 48-3 at 3-4. Thus, that policy is the only one in question in this case.

Nonetheless, as set forth above, it is Plaintiff's burden to demonstrate the invalidity of the prison's policy. He makes no serious effort to do so with respect to the relevant policy. Instead, he argues that the evidence was insufficient to support a finding that he was not guilty of possessing contraband because, "[c]ognitively speaking, the act of placing another's name upon an object does not render the object the 'personal property of' the named person. Moreover, because the typed document was a petition/application to a court of law, this typed document was intended to become a public document, belonging to the public as a whole." ECF No. 48 at 15.[3] This argument is irrelevant to a free-speech claim.

---

[3] Plaintiff does add that if the document at issue were properly considered to be contraband, the policy "is invalid as applied, unconstitutional and in violation of the First Amendment to the U.S. Constitution." ECF No. 48 at 8. However, Plaintiff does not develop this argument in any way. This bald assertion is inadequate to meet the relevant burden.

Because Plaintiff has failed to meet his burden, Winters is entitled to judgment as a matter of law on this claim.

C. Retaliation

Plaintiff's retaliation claim against Winters is based on her filing a misconduct report against him. ECF No. 48 at 19-20. To prevail on a retaliation claim, a plaintiff must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). However, a prisoner's First Amendment retaliation claim fails if prison officials prove "that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.

In support of the instant motion, Defendants argue that they are entitled to judgment as a matter of law on this claim, *inter alia*, because the evidence supporting Plaintiff's misconduct charges precludes those charges from serving as the basis for a retaliation claim. ECF No. 43 at 8-9. Indeed, even assuming that Plaintiff was engaged in constitutionally protected conduct and that Winters acted with "a mixed motive" in issuing the misconduct, no viable retaliation claim exists where there is a "quantum of evidence" supporting the misconduct charges. *See Jackson v. O'Brien*, 2021 WL 982739, *13 (W.D. Pa. March 16, 2021) (citing *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002); *Rauser*, 241 F.3d at 333).

In support of her misconduct report, Winters set forth the following narrative of the events that transpired after she told Plaintiff he was not permitted to have another inmate's legal work.

7

> [Plaintiff] proceeds to swear at me telling me he will f***ing do what he wants, and he reaches across the library counter and tries to pull [the pages of the Fritchman document] out from under my hand where they were laying. I held them down and he did not get them. He is still yelling and swearing at me and telling me to call security because he is not leaving without them. I felt threatened by his actions so I called in CO Thomas who told [Plaintiff] that he was not getting the papers. [Plaintiff] yelled at us saying he already has six other lawsuits and he is going to make this number seven. CO Thomas told him to leave the library and escorted him out. As [Plaintiff] was exiting the library, he t[ur]ned around and yelled at me (Librarian Winters), "You don't know who you are messing with, I'm not your average inmate!" I found this comment to be threatening because he already reached across the counter to take something from me and he told me that he will "f***king do what he wants."

ECF No. 45-1 at 10 (minor alteration added).

In litigating the misconduct charges, Plaintiff conceded that he possessed Fritchman's document, that he attempted to grab it after Winters confiscated it, that he informed Winters that he intended to sue over this perceived civil rights violation, and that he used "f****ing" as an adverb. *Id.* at 11, 13 (minor alteration added).[4] Based on these admissions alone, a sufficient "quantum of evidence" supported Plaintiff's misconduct charges to establish Winters' "same decision" defense and preclude the charges as the basis for a retaliation claim. Plaintiff has offered no evidence to negate this defense. Accordingly, Winters is entitled to judgment as a matter of law on this claim as well.

---

[4] Plaintiff argues that the contents of the misconduct reports constitute inadmissible hearsay that should not be considered by this Court in considering a summary judgment motion. ECF No. 48 at 20 (citing, *inter alia*, Fed.R.C.P. 56(c)(2)). The Court notes that the statements in the reports are not being used to prove the truth of the matters asserted. Instead, the statements are used to show what evidence was before the relevant disciplinary decisionmakers in the prison. As such, they are not hearsay. *United States v. Lacerda*, 958 F.3d 196, 223 (3d Cir. 2020) (explaining that "statements that are offered merely to show that they happened are not offered for a hearsay purpose.").

IV. Conclusion

For the reasons discussed herein, Defendants' Motion for Summary Judgment [ECF No. 42] is GRANTED. Judgment in favor of the Defendants pursuant to Fed. R. Civ. 58 will be entered separately.

RICHARD A. LANZILLO
Chief United States Magistrate Judge